FILED
08/05/2020
Clerk of the
Appellate Courts

# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### July 30, 2020 Session

## EARLE J. FISHER, ET AL. v. TRE HARGETT, ET AL.

**Appeal by Permission from the**
**Chancery Court for Davidson County**
**No. 20-0435-III,    Ellen Hobbs Lyle, Chancellor**

———————————————————

**No. M2020-00831-SC-RDM-CV**

———————————————————

## BENJAMIN LAY, ET AL. v. MARK GOINS, ET AL.

**Appeal by Permission from the**
**Chancery Court for Davidson County**
**No. 20-0453-III     Ellen Hobbs Lyle, Chancellor**

———————————————————

**No. M2020-00832-SC-RDM-CV**

———————————————————

We assumed jurisdiction over these appeals[1] pursuant to Tennessee Code Annotated section 16-3-201(d)(1) (2009 & Supp. 2019) and Rule 48 of the Rules of the Tennessee Supreme Court and ordered expedited briefing and oral argument. The issue we must determine is whether the trial court properly issued a temporary injunction enjoining the State from enforcing its current construction of the eligibility requirements for absentee voting stated in Tennessee Code Annotated section 2-6-201(5)(C) and (D) (2014 & Supp. 2019). The injunction temporarily mandated the State to provide any eligible Tennessee

---

[1] Although these cases were not consolidated in the trial court, they were heard together and a single opinion was issued in both cases. We consolidated the appeals for oral argument. The parties have agreed that all evidence in the record from the trial court may be considered in both appeals and that the legal and factual questions in both are the same. We, therefore, consider the appeals together and issue this single opinion in both. Unless otherwise stated, references in this opinion to plaintiffs and defendants will refer to those parties in both cases.

voter, who applies to vote by mail in order to avoid transmission or contraction of COVID-19, an absentee ballot in upcoming elections during the pendency of pandemic circumstances.  The injunction further mandated the State to implement the construction and application of Tennessee Code Annotated section 2-6-201(5)(C) and (D) that any qualified voter who determines it is impossible or unreasonable to vote in-person at a polling place due to the COVID-19 situation shall be eligible to check the box on the absentee ballot application that "the person is hospitalized, ill or physically disabled and because of such condition, the person is unable to appear at the person's polling place on election day; or the person is a caretaker of a hospitalized, ill or physically disabled person," and have that absentee voting request duly processed by the State in accordance with Tennessee law.  At oral argument before this Court, the State conceded that, under its interpretation of Tennessee Code Annotated section 2-6-201(5)(C) and (D), persons who have underlying medical or health conditions which render them more susceptible to contracting COVID-19 or at greater risk should they contract it ("persons with special vulnerability to COVID-19"), as well as those who are caretakers for persons with special vulnerability to COVID-19, already are eligible to vote absentee by mail.  We hold that injunctive relief is not necessary with respect to such plaintiffs and persons.  We instruct the State to ensure that appropriate guidance, consistent with the State's acknowledged interpretation, is provided to Tennessee registered voters with respect to the eligibility of such persons to vote absentee by mail in advance of the November 2020 election.

With respect to those plaintiffs and persons who do not have special vulnerability to COVID-19 or who are not caretakers for persons with special vulnerability to COVID-19, we hold that the trial court erred in issuing the temporary injunction.  Accordingly, we vacate the temporary injunction.  Recognizing that absentee ballots already have been cast for the August 6, 2020 election consistent with the trial court's temporary injunction, and mindful of the goal of avoiding alterations to election rules on the eve of an election, the absentee ballots of all Tennessee registered voters who timely requested and submitted an absentee ballot by mail for the August 6, 2020 election pursuant to the trial court's temporary injunction and which absentee ballots otherwise meet the requirements of the absentee voting statutes shall be duly counted.  These cases are remanded to the trial court for further proceedings consistent with this opinion.

This opinion is not subject to rehearing under Tennessee Rule of Appellate Procedure 39, and the Clerk is directed to certify this opinion as final and to immediately issue the mandate.

**Tenn. Code Ann. § 16-3-201(d)(1) Appeal by Permission; Judgments of the
Chancery Court Vacated and Cases Remanded**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., HOLLY KIRBY, and ROGER A. PAGE, JJ., joined. SHARON G. LEE, J., filed a separate opinion concurring in part and dissenting in part.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Janet M. Kleinfelter, Deputy Attorney General; and Alexander S. Rieger, Assistant Attorney General, Nashville, Tennessee, for the appellants, Mark Goins, Tre Hargett, William Lee, and Herbert H. Slatery III, each in his official capacity for the State of Tennessee.

Steven J. Mulroy, Jacob W. Brown, and Bruce S. Kramer, Memphis, Tennessee, for the appellees, Reverend Earle J. Fisher, Julia Hiltonsmith, Jeff Bullard, Allison Donald, and #UptheVote901.

Thomas H. Castelli, Nashville, Tennessee, Elizabeth Sitgreaves, Brentwood, Tennessee, Angela M. Liu, Chicago, Illinois, Dale E. Ho, Sophia Lin Lakin, Neil A. Steiner, New York, New York, and Gregory P. Luib and Tharuni A. Jayaraman, Washington, D.C. for the appellees, Benjamin William Lay, Carole Joy Greenawalt, and Sophia Luangrath.

William S. Consovoy, Cameron T. Norris, and Jordan M. Call, Arlington, Virginia, for the amicus curiae, Honest Elections Project.

Brian K. Kelsey, Chicago, Illinois and Sue L. Becker, Indianapolis, Indiana, for the amicus curiae, The Public Interest Legal Foundation.

Jason B. Torchinsky, Dennis W. Polio, Jonathan P. Lienhard, Warrenton, Virginia, and Justin N. Joy, Memphis, Tennessee, for the amicus curiae, The Republican National Committee and Tennessee Republican Party.

Danielle M. Lang, Ravi R. Doshi, Dana Paikowsky, Pooja Chaudhuri, Ezra D. Rosenberg, Washington, D.C. and William L. Harbison, Lisa K. Helton, Christopher C. Sabis, Christina R.B. López, Nashville, Tennessee, for the amici curiae, League of Women Voters of Tennessee, Tennessee State Conference of the NAACP, Memphis Central Labor Council, Memphis A. Philip Randolph Institute, The Equity Alliance, and Free Hearts.

Stephen J. Zralek, Nashville, Tennessee, and Debo P. Adegbile, New York, New York, for the amici curiae, David M. Aronoff, M.D., Nina Fefferman, Ph. D., James E.K. Hildreth, Sr., Ph. D., M.D., William Schaffner, M.D., Thomas Talbot, M.D., M. P.H, Edwin Trevathan, M.D., M.P.H., C. William Wester, M.D., M.P.H., Doctors and Professors Specializing in Epidemiology and Infectious Diseases.

Van D. Turner, Jr. and Bruce Turner, Memphis, Tennessee, for the amici curiae, The Tennessee Black Caucus of State Legislators, The Ben F. Jones Chapter of the National Bar Association, and the Tennessee Alliance of Black Lawyers.

**OPINION**

## I. Factual and Procedural History

The State of Tennessee, like the entirety of the United States, is in the midst of an unprecedented public health crisis due to COVID-19. The Tennessee Attorney General recently described the situation faced by the State and the country:

> The United States is in a public health crisis due to COVID-19. On January 31, 2020, the United States Department of Health and Human Services determined that, as of January 27, 2020, COVID-19 constituted a nationwide public health emergency. On March 11, 2020, the World Health Organization classified COVID-19 as a global pandemic. The pandemic remains ongoing and is currently surging.

> Symptoms of COVID-19 can include fever, cough, shortness of breath, fatigue, loss of the senses of taste and smell, and body aches, among others. And the health effects of the disease can be severe, including serious damage to the lungs and other internal organs, and death. People with certain underlying health conditions and older adults have a heightened vulnerability to severe illness and death if they contract the virus.

> As of July 16, 2020, at least 3,416,428 people in the United States have been infected with the virus and over 135,991 people have died from the disease that it causes. In Tennessee, there have been 68,441 confirmed cases, 3,434 hospitalizations, and 755 deaths since the first case was reported by the Tennessee Department of Health on March 5, 2020.[2]

---

[2] As of August 4, 2020, one source reports that 4,773,775 people in the United States have been infected with COVID-19 and that 156,874 people have died. COVID-19 Dashboard, Johns Hopkins Coronavirus Resource Center, https://coronavirus.jhu.edu/ (last visited Aug. 5, 2020); see also Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited Aug. 5, 2020) (reporting that 4,698,818 persons in the United States have been infected with COVID-19 and that 155,204 deaths from COVID-19). In Tennessee, there have been 112,441 confirmed cases, at least 4,900 hospitalizations, and 1,117 confirmed deaths. Tennessee

COVID-19 is particularly dangerous not only because it results in severe illness, but also because it is easily and rapidly transmitted. The disease is believed to be transmitted through respiratory droplets produced by an infected person, close personal contact, or touching a surface with the virus on it. The virus spreads very easily through "community spread." While infected individuals are thought to be the most contagious when they are showing symptoms, asymptomatic individuals are also capable of spreading the virus, which makes response efforts particularly daunting.

Because there is currently no vaccine, cure, or proven effective treatment for COVID-19, the best way to prevent illness is to avoid being exposed to the virus. The Centers for Disease Control and Prevention ("CDC") recommends frequent hand washing, maintaining good social distance (at least [six] feet), routinely cleaning and disinfecting frequently touched surfaces, and covering mouth and nose with a cloth face covering when around others.

Op. Tenn. Att'y Gen. No. 20-14 at **1–2 (July 24, 2020) (internal citations and footnotes omitted). In his most recent executive order related to the COVID-19 pandemic, defendant Governor William Lee similarly recognized the continuing "threat to our citizens, our healthcare systems, and our economy" posed by COVID-19. 2019 Tenn. Exec. Order No. 55 at 1 (July 31, 2020).

In response to the COVID-19 pandemic, the Governor declared a state of emergency on March 12, 2020. As recently as July 31, 2020, the Governor declared that the state of emergency remains in effect. Id. The Governor additionally has continued to issue executive orders "designed to slow the spread of the disease and to protect the health of Tennessee residents." Op. Tenn. Att'y Gen. No. 20–14 at *2 (July 24, 2020) (footnote omitted).

In response to the COVID-19 pandemic, defendant Coordinator of Elections Mark Goins oversaw the Tennessee Division of Elections' preparation and issuance of the April 23, 2020 Tennessee Election COVID-19 Contingency Plan (the "Plan"). The Plan contains numerous COVID-19 related measures delineating procedures for in-person voting for the August and November 2020 elections. The Plan anticipates an increase in those voters who choose to vote absentee by mail pursuant to Tennessee's absentee

COVID-19 Unified Command Dashboard, Tennessee Department of Health, https://www.tn.gov/health/cedep/ncov.html (last visited Aug. 5, 2020).

voting statute, Tennessee Code Annotated section 2-6-201.[3]  The Plan does not expressly provide, however, for any expansion of those persons who are eligible to vote absentee by mail pursuant to the statute.

Relevant to this appeal, the statutory qualifying reasons for voting absentee by mail include the following:

A registered voter in any of the following circumstances may vote absentee by mail in the procedures outlined in this part:

…

(5) Persons Over 60--Persons Hospitalized, Ill or Disabled.    . . .

(C) The person is hospitalized, ill or physically disabled, and because of such condition, the person is unable to appear at the person's polling place on election day; or

(D) The person is a caretaker of a hospitalized, ill or disabled person

Tenn. Code Ann. § 2-6-201(5)(C) and (D) (2014 & Supp. 2019).   With respect to absentee voting by mail related to COVID-19, the Plan construes these pertinent statutory eligibility requirements for voting absentee by mail as limited to the following individuals: "A person who is quarantined because of a potential exposure or who has tested positive to COVID-19 should vote absentee by-mail as a person who is ill." Coordinator of Elections Goins explained in his declaration filed in the trial court that "[t]he *statutory eligibility criteria do not include fear of becoming ill or of spreading COVID-19.  A person who is quarantined because of a potential exposure or who has tested positive to COVID-19 should vote absentee by-mail as a person who is ill*."

On May 8, 2020, plaintiffs Reverend Earle J. Fisher, Julia Hiltonsmith, Jeff Bullard,[4] Allison Donald, and #UptheVote901[5] filed a complaint seeking injunctive and

_____

[3] According to a report released by the State, as of Saturday, August 1, 2020, early voting statistics show that a total of 578,252 voters in Tennessee have cast a ballot in the August 2020 election. Tenn. Sec'y of State, Early and Absentee Voters for the August 6, 2020 Primary and General Elections 1, https://sos-tn-gov-files.tnsosfiles.com/20200806EarlyAbsentee.pdf?_yefR2cV_AtuK0SxVxWUdEacquvW3FxT (last updated Aug. 3, 2020, 9:24 AM).   The report amalgamates "in-person early voters, absentee by-mail ballots submitted by voters, and voters at licensed facilities" and does not delineate the numbers in those subcategories separately. Id.  Overall, these numbers indicate an increase in early voting participation of 76.91% from 2012 and 105.59% from 2016.  Tenn. Sec'y of State, Early Voting Stats through 14 days— All Voters 3,   https://sos-tn-gov-files.tnsosfiles.com/August%202020%20-%20All.pdf?01d105W34S F4muRgCFrdacMR7BJ8VhO8 (last visited on Aug. 4, 2020).

- 6 -

declaratory relief against, Tre Hargett, Secretary of State of Tennessee; Mark Goins, Coordinator of Elections; William Lee, Governor of the State of Tennessee; and Herbert H. Slatery III, Attorney General and Reporter, suing each in his official capacity for the State of Tennessee. The Fisher plaintiffs alleged that the individual plaintiffs are all registered Tennessee voters who wish to vote by mail in the August 2020 and November 2020 elections due to the COVID-19 pandemic but who do not satisfy the statutory eligibility requirements for absentee voting by mail set forth in Tennessee Code Annotated section 2-6-201. The Fisher plaintiffs alleged that Reverend Fisher wishes to vote by mail "because his appearing in person at a polling site would increase his personal risk of contracting or transmitting [COVID-19], as well as the societal risk that a clustering of persons at polling locations will precipitate another 'surge' in COVID-19 cases across the state." Reverend Fisher alleged that he "reasonably fears that voting in person at a polling location would expose him to an increased and unwarranted risk of contracting [COVID-19], which in turn would compromise his ability to tend to members of his flock in their times of need." The Fisher plaintiffs similarly alleged that Ms. Hiltonsmith wishes to vote absentee by mail due to the risk associated with voting in person. They further alleged that "Ms. Hiltonsmith has been diagnosed with an autoimmune disorder that, according to current guidelines of medical professionals and federal and state officials, makes her especially vulnerable to [COVID-19]," and that she also has regular contact with a family member who is particularly vulnerable to it. The Fisher plaintiffs alleged that Ms. Donald wishes to vote absentee by mail due to the risk associated with voting in person, that she suffers from a medical condition that renders her particularly vulnerable to COVID-19, and that she works with clients who suffer from such conditions. Finally, the Fisher plaintiffs alleged that #UpTheVote901 is a Memphis-based volunteer organization devoted to educating voters and increasing voter registration and turnout. They alleged that the current statutory eligibility requirements for absentee voting by mail will unduly burden the right to vote of certain of #UpTheVote901's members and have a chilling effect on voter turnout.

The Fisher plaintiffs sought declaratory and injunctive relief to expand access to vote-by-mail procedures to all registered Tennessee voters who wish to vote absentee during the COVID-19 pandemic. They contended that, in the midst of the COVID-19 pandemic, restricting Tennesseans' vote-by-mail access to voters over sixty years of age, or who otherwise meet one of the other absentee ballot eligibility criteria in Tennessee

---

[4] The trial court held that Plaintiff Jeff Bullard lacked standing, and that holding is not before this Court on appeal.

[5] Additional plaintiffs Hunter Demster and Ginger Bullard were voluntarily dismissed by order filed June 1, 2020.

Code Annotated section 2-6-201, would impose impermissibly burdensome conditions on the right to vote under article I, section 5 of the Tennessee Constitution.[6]

The Fisher plaintiffs requested that the court declare that:

(a) . . . every registered voter in Tennessee shall be eligible, upon request, to vote absentee in the August 2020 and November 2020 elections;

(b) . . . any registered Tennessee voter attempting to vote absentee in the August 2020 or November 2020 election, or both, shall be considered "otherwise eligible to vote absentee" for purposes of the voter's attestation on any voter's affidavit form contemplated by Tenn[essee] Code Ann[otated section] 2-6-309(b);

(c) . . . because of [COVID-19]'s threat to individual and public safety, requiring the individual [p]laintiffs and similarly situated others to vote in person for the August 2020 and November 2020 elections would impose an impermissibly burdensome condition on these individuals' voting rights, in violation [sic] the Tennessee Constitution;

(d) . . . because of [COVID-19]'s threat to individual and public safety, requiring these individual [p]laintiffs and similarly situated others to vote in person for the August 2020 and November 2020 elections would

---

[6] The Fisher plaintiffs also raised two additional claims. First, they contended that enforcing the restrictions during the pandemic would constitute one or more unlawful classifications of Tennesseans, violating the equal protection clause of the Tennessee Constitution. In the alternative, the Fisher plaintiffs contended that the only constitutionally compliant construction of Tennessee Code Annotated section 2-6-201(3)(A) allows for a Tennessee-licensed physician to certify the entire population of a county "medically unable to vote" because of the danger posed by the pandemic. The trial court did not address the Fisher plaintiffs' equal protection clause constitutional challenge and denied their alternative claim for relief. The Fisher plaintiffs' only mention of these claims is in a footnote in their brief before this Court, in which they assert that they are preserving these claims on appeal. This is not sufficient to preserve issues relating to these claims, and any such issues are deemed waived for purposes of the instant appeal. See Hodge v. Craig, 382 S.W.3d 325, 334–35 (Tenn. 2012) (holding that, pursuant to the Tennessee Rules of Appellate Procedure, an issue may be deemed waived if it is not designated specifically as an issue in the party's brief or if it is stated in party's brief but not accompanied by sufficient argument).

constitute an improper classification burdening the fundamental right to vote under that Constitution; or in the alternative,

(e)  . . . in the midst of the COVID-19 pandemic, Tennessee law allows a Tennessee-licensed physician to validly certify to a county election commission that all voters in that county are medically unable to vote in person due to the pandemic . . .

They further requested temporary and permanent injunctive relief prohibiting election administrators across the State from:

(a) [d]enying any written or in-person absentee ballot request for the August 2020 or November 2020 election on the basis of the applicant's not meeting one or more of the conditions enumerated in Tenn[essee] Code Ann[otated section] 2-6-201;

(b) [u]nduly delaying the review, processing, or both of any absentee-ballot request made or purporting to be made by, or lawfully on behalf of, a registered Tennessee voter;

(c) [r]ejecting any absentee ballot cast in the August 2020 or November 2020 election cycles on the basis of the voter's not meeting one or more of the conditions enumerated under Tenn[essee] Code Ann[otated section] 2-6-201; [and]

(d) [f]ailing to timely process any absentee ballot timely received by the deadlines provided under Tennessee Law.

By order filed May 12, 2020, the trial court set the Fisher plaintiffs' request for a temporary injunction for hearing on May 28, 2020, without oral testimony pursuant to Davidson County Local Rule 19.04.

On May 15, 2020, plaintiffs, Benjamin William Lay, Carole Joy Greenawalt,[7] and Sophia Luangrath, filed a complaint seeking injunctive and declaratory relief against defendants, Mark Goins, Tre Hargett, and William Lee, each in his official capacity for

---

[7] The trial court held that plaintiff Carole Joy Greenawalt lacks standing, and that holding is not before the Court on appeal.

the State of Tennessee.[8]  On May 22, 2020, the Lay plaintiffs filed an amended complaint.

The Lay plaintiffs alleged that Mr. Lay is a cancer survivor who suffers from a compromised immune system and that his wife, Carole Joy Greenawalt, also is immunosuppressed.  The Lay plaintiffs further alleged that "Mr. Lay has been self-quarantining at home with his wife and has been practicing the social distancing measures prescribed by the CDC."  The Lay plaintiffs alleged that Mr. Lay is registered to vote in Tennessee and has previously voted in elections in Tennessee.  "Due to his wife's immunocompromised status and his cancer history, however, he cannot vote safely in person during the COVID-19 pandemic."  The Lay plaintiffs alleged that the State's construction of the statutory eligibility requirements prevents Mr. Lay from voting absentee by mail.  The Lay plaintiffs alleged that Ms. Luangrath is a twenty-one-year-old resident of Rutherford County, Tennessee, that she voted in the 2018 midterm election, and that the State's construction of the statutory eligibility requirements prevents Ms. Luangrath from voting absentee by mail.

The Lay plaintiffs alleged that the State had construed the statutory eligibility requirements for absentee voting by mail to mean that fear of contracting the coronavirus does not constitute illness and, therefore, does not meet the criteria to vote absentee ballot by mail in Tennessee.  Instead, the Lay plaintiffs alleged that the State had construed the statute to mean that only individuals who have quarantined because of a potential exposure to COVID-19 or who have tested positive for COVID-19 are permitted to vote absentee by mail as a person who is ill.  The Lay plaintiffs alleged that this construction is "plainly unreasonable."  The Lay plaintiffs further alleged that the State's construction and enforcement of the statutory eligibility requirements for absentee voting by mail "severely burdens the fundamental right to vote of all eligible voters who are practicing [s]ocial [d]istancing [m]easures and/or are self-quarantining to prevent exposure to COVID-19," that this construction "will likely disenfranchise tens of thousands of Tennesseans," and that this construction will "deny the fundamental right to vote guaranteed by the Tennessee Constitution."  The Lay plaintiffs asserted violations of the fundamental right to vote under article IV, section 1 and article I, section 5 of the Tennessee Constitution.

The Lay plaintiffs asked the court to declare that the State's construction and enforcement of the statutory eligibility requirements for absentee voting by mail as stated in Tennessee Code Annotated section 2-6-201 violates the fundamental right to vote under article IV, section 1 of the Tennessee Constitution and the fundamental right to

---

[8] The defendants in both cases will hereinafter be referred to jointly as "the State."

- 10 -

vote under article I, section 5 of the Constitution "(i) for the 2020 election calendar, (ii) while the State's ongoing 'state of emergency' is in effect, or (iii) while the CDC is advising individuals to engage in any of its recommended [s]ocial [d]istancing [m]easures." The Lay plaintiffs further asked the court to issue preliminary and permanent injunctions prohibiting the State from enforcing statutory eligibility requirements for absentee voting by mail as stated in Tennessee Code Annotated section 2-6-201:

> to prevent:
> - any eligible voter, regardless of age and physical condition;
> - any eligible voter who lives with an individual who is at a higher risk of complications should they contract COVID-19; and/or
> - any eligible voter who is at a higher risk of complications should they contract COVID-19
>
> to request, receive, and have counted an absentee ballot by mail at least for the 2020 election calendar and until the State's ongoing "state of emergency" is lifted and the CDC no longer advises individuals to engage in any of its recommended [s]ocial [d]istancing [m]easures . . .

On May 22, 2020, the Lay plaintiffs filed a motion for a temporary injunction pursuant to Rule 65.04 of the Tennessee Rules of Civil Procedure, supported by declarations. On May 27, 2020, the trial court set the motion for hearing on June 3, 2020, without oral testimony pursuant to Davidson County Local Rule 19.04. The trial court reset the hearing in the Fisher plaintiffs' case for that same date. The State filed responses in both cases supported by declarations. The plaintiffs filed replies supported by supplemental declarations, and the State filed sur-replies supported by additional declarations.

On June 4, 2020, following the hearing, the trial court filed its "Memorandum and Order Granting Temporary Injunction to Allow Any Tennessee Registered Voter to Apply for a Ballot to Vote by Mail Due to COVID-19." The trial court characterized the issue before it as "whether, in this time of the pandemic, the States' [sic] construction and application of Tennessee law constitutes an unreasonable and discriminatory burden on the fundamental right to vote vigorously guaranteed by the Tennessee Constitution." The court characterized the relief sought by the plaintiffs on their motion for a temporary injunction as "seek[ing] for the Court to enjoin the States' [sic] restrictive application of the law and for a mandate that the State must provide the Plaintiffs access to voting by mail." The trial court then summarized its holding as follows:

> After studying the evidence and the law, and considering argument of [c]ounsel, the [c]ourt finds that the evidence does not support the State's

claims that it is impossible for it to provide expanded access to voting by mail. Respectfully, the evidence is that the assumptions the State has employed in its fiscal and resource calculations are oddly skewed and not in accordance with the methodology of its own expert and industry standards. When, however, normal industry-recognized assumptions are used, the evidence establishes that the resources are there to provide temporary expanded access to voting by mail in Tennessee during the pandemic if the State provides the leadership and motivation as other states have done. As to voter fraud, the State's own expert debunks and rejects that as a reason for not expanding access to voting by mail.

From this evidence and upon using the legal standard of <u>Anderson-Burdick</u>, the Court concludes that the State's restrictive interpretation and application of Tennessee's voting by mail law (Tennessee Code Annotated section 2-6-201), during the unique circumstances of the pandemic, constitutes an unreasonable burden on the fundamental right to vote guaranteed by the Tennessee Constitution. Accordingly[,] the Plaintiffs are entitled to issuance of a temporary injunction.

(Footnote omitted). The trial court granted the plaintiffs' motion for a temporary injunction and ordered as follows:

[T]he Plaintiffs' motion for a temporary injunction is granted to the extent that, until further order of the [c]ourt, the Defendants are enjoined from:

— enforcing their current construction of the "excuse requirement" for absentee voting stated in Tennessee Code Annotated section 2-6-201(5)(C) and (D), and

are mandated to:

— provide any eligible Tennessee voter, who applies to vote by mail in order to avoid transmission or contraction of COVID-19, an absentee ballot in upcoming elections during the pendency of pandemic circumstances; and

— implement the construction and application of Tennessee Code Annotated section 2-6-201(5)(C) and (D) that any qualified voter who determines it is impossible or unreasonable to vote in-person at a polling place due to the COVID-19 situation shall be eligible to check the box on the absentee ballot application that, "the person is hospitalized, ill or physically disabled and because

- 12 -

of such condition, the person is unable to appear at the person's polling place on election day; or the person is a caretaker of a hospitalized, ill or physically disabled person," and have that absentee voting request duly processed by the State in accordance with Tennessee law.

In addition[,] it is ORDERED that the Defendants are mandated to:

— prominently post on their websites and disseminate to County Election Officials that voters who do not wish to vote in-person due to the COVID-19 virus situation are eligible to request an absentee ballot by mail or that such voters still have the option to vote in-person during Early voting or on Election Day.

Not ordered herein is a requirement that the State must automatically mail absentee ballots to all Tennessee registered voters, a practice being implemented in some states before and in response to the pandemic.

(Footnotes omitted). As the trial court explained:

[t]he difference is that the injunction issued above keeps in place and tracks the requirement of Tennessee law that to obtain a mail-in ballot, a voter must first apply for one so that it is only voters who apply to vote by mail that the State must print and mail absentee ballots to as the applications come in.

On June 5, 2020, the State filed a motion for an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure and a motion for a stay pending appeal pursuant to Rules 62.03 and 62.06 of the Tennessee Rules of Civil Procedure and requested expedited review. By order filed June 10, 2020, the trial court granted the State's motion for an interlocutory appeal on the issue of "whether the June 4, 2020 Temporary Injunction is valid and shall remain in effect." The trial court denied the State's motion for a stay pending appeal.

On June 12, 2020, the State filed in the Court of Appeals an application for permission to appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure and requested expedited review.[9] The single issue raised in the application was "whether the temporary injunction was properly issued." The State simultaneously filed in the

---

[9] The State included its merits brief within its application.

Court of Appeals a motion seeking review of the trial court's denial of a stay pursuant to Rule 7 of the Tennessee Rules of Appellate Procedure and/or for the entry of a stay pending appeal pursuant to Rule 62.08 of the Tennessee Rules of Civil Procedure and requested expedited consideration of those motions.

Also on June 12, 2020, the State filed in this Court a motion to assume jurisdiction of the appeal pursuant to Tennessee Code Annotated section 16-3-201(d)(1) and (2) and Rule 48 of the Rules of the Tennessee Supreme Court. By order filed June 24, 2020, this Court granted the State's motion to assume jurisdiction and its application for permission to appeal and set an expedited briefing schedule. By separate order entered that same day, the Court denied the State's motion for a stay pending appeal. By order filed July 24, 2020, this Court set the cases for consolidated oral argument on July 30, 2020, and oral argument was held on that date.

## II. Analysis

### A. Scope of Review

This is an interlocutory appeal. The Court's review is limited to those questions clearly within the scope of the issue certified for interlocutory appeal. Funk v. Scripps Media, Inc., 570 S.W.3d 205, 210 (Tenn. 2019). As noted, the trial court and the State broadly stated the issue as the propriety of the trial court's entry of the temporary injunction. In their reply brief, the State restated the issue more narrowly: "The only question before this Court is whether the Tennessee Constitution *requires* the State to allow *all Tennessee voters* to vote by mail in the August and November elections."

The parties acknowledge, however, that there are two distinct categories of plaintiffs and persons within the scope of the trial court's temporary injunction: 1) persons with special vulnerability to COVID-19 and persons who are caretakers for persons with special vulnerability to COVID-19; and 2) persons who neither have special vulnerability to COVID-19 nor are caretakers for persons with special vulnerability to COVID-19. At oral argument before this Court, the State agreed that persons in the first category are eligible to vote absentee by mail under the provisions of Tennessee Code Annotated section 2-6-201(5)(C) and (D), but the State continues to contend that persons in the second category are not eligible to vote absentee by mail. The Court, therefore, addresses these two categories separately.

### B. Plaintiffs and Persons with Special Vulnerability to COVID-19

As noted, the State has agreed that those plaintiffs and persons with special vulnerability to COVID-19 or who are caretakers of persons with special vulnerability to COVID 19 are eligible to vote absentee by mail pursuant to the statutory eligibility

requirements for absentee voting by mail set forth in Tennessee Code Annotated section 2-6-201(5)(C) and (D). The State also has agreed that it has a responsibility to provide instructions to local election officials and to voters that are consistent with its expressed interpretation of Section 2-6-201(5)(C) and (D). We accept the State's concessions. State v. Franklin, 308 S.W.3d 799, 811 (Tenn. 2010) (citing Barron v. Tenn. Dep't of Human Serv., 184 S.W.3d 219, 223 (Tenn. 2006)). We have no reason to doubt that the State will faithfully discharge its duty to implement the absentee voting statutes and will permit such persons to vote absentee by mail pursuant to the requirements, processes, and procedures set forth in those statutes. West v. Schofield, 460 S.W.3d 113, 131 (Tenn. 2015) (stating that public officials are "presumed to discharge their duties in good faith and in accordance with the law" (citations omitted)). We instruct the State to ensure that appropriate guidance is provided to Tennessee registered voters with respect to the eligibility requirements of such persons to vote absentee by mail in advance of the November 2020 election.[10] Accordingly, we hold that as to plaintiffs and persons with special vulnerability to COVID-19 or who are caretakers of persons with special vulnerability to COVID 19, injunctive relief is not necessary.

### C. Plaintiffs and Persons without Special Vulnerability to COVID-19

#### 1. Temporary Injunction and Standard of Review

The interlocutory appeal in this case is from the trial court's grant of a temporary injunction. Rule 65.04(2) of the Tennessee Rules of Civil Procedure provides:

> [a] temporary injunction may be granted during the pendency of an action if it is clearly shown by verified complaint, affidavit or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage

---

[10] Such guidance may include that provided by the CDC with respect to underlying medical and health conditions which place individuals at heightened risk for COVID-19. In addition, the guidance should inform voters that, as set forth in the State's COVID-19 Contingency Plan, for those who request a mail-in ballot on the basis that the voter is either ill or the caretaker of someone who is ill, "[a] physician's statement is not required to allow these voters to vote absentee by-mail." As the State acknowledged during oral argument, these statutory provisions operate essentially as an "honor system" in that the voter makes his or her own determination as to being "ill" or the caretaker for someone who is "ill," based on the voter's own knowledge.

pending a final judgment in the action, or that the acts or omissions of the adverse party will tend to render such final judgment ineffectual.

Tenn. R. Civ. Pro. 65.04(2) (2020). Like the federal courts, Tennessee trial courts consider four factors in determining whether to issue a temporary injunction: "(1) the threat of irreparable harm to the plaintiff if the injunction is not granted; (2) the balance between this harm and the injury that granting the injunction would inflict on defendant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest." Moody v. Hutchison, 247 S.W.3d 187, 199–200 (Tenn. Ct. App. 2007) (citing Mosby v. Colson, No. W2006-00490-COA-R3-CV, 2006 WL 2354763 (Tenn. Ct. App. Aug. 14, 2006)), perm. app. denied (Tenn. Mar. 3, 2008); Obama for America v. Husted, 697 F.3d 423, 428 (6th Cir. 2012). Where, as here, the temporary injunction is sought on the basis of an alleged constitutional violation, the third factor—likelihood of success on the merits—often is the determinative factor. Obama for America, 697 F.3d at 436 (citing Jones v. Caruso, 569 F.3d 258, 265 (6th Cir. 2009)). A plaintiff's failure to show likelihood of success on the merits is usually fatal. Lyons v. City of Columbus, No. 2:20-cv-3070, 2020 WL 3396319, at *2 (S.D. Ohio June 19, 2020) (citations omitted).

In these cases, the temporary injunction sought and ordered was mandatory, as opposed to prohibitory. A mandatory injunction is one which alters the status quo and orders the defendant to take action to remedy the alleged wrong. See Lawrence A. Pivnick, 2 Tenn. Cir. Ct. Prac. § 31:2 (Dec. 2019 update). This Court has long recognized the extraordinary nature of mandatory injunctions and has cautioned that this relief should be granted only in exceptional circumstances. Cole v. Dych, 535 S.W.2d 315, 322 (Tenn. 1976); King v. Elrod, 268 S.W.2d 103, 106 (Tenn. 1954).

The trial court's decision to grant the plaintiffs' request for a temporary injunction is discretionary and is reviewed under an abuse of discretion standard. Gentry v. McCain, 329 S.W.3d 786, 793 (Tenn. Ct. App. 2010), perm. app. denied (Tenn. Oct. 18, 2010); Hughes v. Tenn. Dep't of Corr., No. M2016-02212-COA-R3-CV, 2017 WL 4125378, at *2 (Tenn. Ct. App. Sept. 18, 2017); Curb Records, Inc. v. McGraw, No. M2011-02762-COA-R3-CV, 2012 WL 4377817, at *3 (Tenn. Ct. App. Sept. 25, 2012), perm. app. denied (Tenn. Feb. 12, 2013). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." Harmon v. Hickman Cmty. Healthcare Servs., Inc., 594 S.W.3d 297, 305–06 (Tenn. 2020) (citations omitted).

Whether the trial court applied an incorrect legal standard is a question of law and is reviewed *de novo* with no presumption of correctness. Funk, 570 S.W.3d at 211 (citing Wallace v. Metro. Gov't of Nashville, 546 S.W.3d 47, 52 (Tenn. 2018)). Questions of fact normally are reviewed *de novo* but with a presumption of correctness unless the

evidence preponderates otherwise. See Tenn. R. App. P. 13(d) (2020); Hughes v. Tenn. Bd. of Prob. and Parole, 514 S.W.3d 707, 712 (Tenn. 2017). In this appeal, however, all evidence was documentary. There was no live testimony; instead, there were only declarations. Accordingly, we afford no deference and no presumption of correctness to the trial court's findings of fact. See Kelly v. Kelly, 445 S.W.3d 685, 693 (Tenn. 2014) ("When findings are based on documentary evidence, an appellate court's ability to assess credibility and to weigh the evidence is the same as the trial court's. Accordingly, when factual findings are based on documentary evidence, an appellate court may draw its own conclusions with regard to the weight and credibility to be afforded that documentary evidence." (Citation omitted)); Wells v. Tenn. Bd. of Regents, 9 S.W.3d 779, 783-84 (Tenn. 1999) (citing Corcoran v. Foster Auto GMC, Inc., 746 S.W.2d 452, 456 (Tenn. 1988)).

## 2. Likelihood of Success on the Merits

### a. Standard of Review

Whether a plaintiff is likely to succeed on the merits for purposes of a temporary injunction is a question of law and is reviewed *de novo*. See Obama for America, 697 F.3d at 428. The underlying claim as to which the Court must determine the likelihood of success on the merits is the constitutionality of the State's construction and application of Tennessee Code Annotated section 2-6-201(5)(C) and (D), which prescribes the eligibility criteria for voting absentee by mail. "When analyzing the constitutionality of a statute, we review the issue *de novo* with no presumption of correctness to the lower court's legal conclusions." Tenn. Bd. of Prob. and Parole, 514 S.W.3d at 712 (citing Waters v. Farr, 291 S.W.3d 873, 882 (Tenn. 2009)).

### b. Standing

As part of its argument to the trial court on the temporary injunction factor of likelihood of success on the merits, the State raised a challenge to the plaintiffs' standing. This argument was also included in the State's initial brief in its Rule 9 application to the Court of Appeals. It is not entirely clear from the State's supplemental brief and supplemental reply brief filed in this Court whether it continues to assert a challenge to plaintiffs' standing. We nonetheless preliminarily address standing.

The question of standing is one that ordinarily precedes a consideration of the merits of a claim. City of Memphis v. Hargett, 414 S.W.3d 88, 96 (Tenn. 2013). "The proper focus of a determination of standing is a party's right to bring a cause of action, and the likelihood of success on the merits does not factor into such an inquiry." Id. at 97 (citing ACLU of Tenn. v. Darnell, 195 S.W.3d 612, 620 (Tenn. 2006)); Wood v. Metro.

Nashville & Davidson Cnty. Gov't, 196 S.W.3d 152, 158 (Tenn. Ct. App. 2005) (citing Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 484 (1982); Petty v. Daimler/Chrysler Corp., 91 S.W.3d 765, 767 (Tenn. Ct. App. 2002)), perm. app. denied (Tenn. June 26, 2006); Mayhew v. Wilder, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001), perm. app. denied (Tenn. Mar. 19, 2001). That being said, a party's standing may turn on the nature of the claim and requires a determination of whether a plaintiff is entitled to an adjudication of the particular claim. City of Memphis, 414 S.W.3d at 97 (citation omitted).

The State challenged the plaintiffs' constitutional standing. Constitutional standing is a fundamental requirement of a justiciable controversy. Id. at 98. To establish constitutional standing, a plaintiff must satisfy three elements: 1) a distinct and palpable injury; that is, an injury that is not conjectural, hypothetical, or predicated upon an interest that a litigant shares in common with the general public; 2) a causal connection between the alleged injury and the challenged conduct; and 3) the injury must be capable of being redressed by a favorable decision of the court. Id. (citing Darnell, 195 S.W.3d at 620). As this Court has explained these three elements:

> First, a party must show an injury that is "distinct and palpable"; injuries that are conjectural, hypothetical, or predicated upon an interest that a litigant shares in common with the general citizenry are insufficient in this regard. Second, a party must demonstrate a causal connection between the alleged injury and the challenged conduct. While the causation element is not onerous, it does require a showing that the injury to a plaintiff is "fairly traceable" to the conduct of the adverse party. The third and final element is that the injury must be capable of being redressed by a favorable decision of the court.

Id. (citations omitted). In this appeal, the proper focus of the standing inquiry is on the asserted infringement to the right to vote and the alleged facts regarding that asserted infringement and resulting injury to the plaintiffs. See id. at 99-100. We find that the plaintiffs have asserted a sufficient infringement and have alleged sufficient facts regarding an injury to establish constitutional standing. As in City of Memphis, it appears here too that the State's arguments actually "pertain to the merits of the claim of undue burden, rather than the issue of standing." Id. at 100 (citing Darnell, 195 S.W.3d at 620).

### c. Nature of Constitutional Challenge and Burden

A constitutional challenge to a statute may be either facial or as-applied. In a facial challenge, the plaintiff contends that there are no circumstances under which the statute, as written, may be found valid. City of Memphis, 414 S.W.3d at 103 (citing

Davis-Kidd Booksellers, Inc. v. McWherter, 866 S.W.2d 520, 525 (Tenn. 1993)); Tenn. Bd. of Prob. and Parole, 514 S.W.3d at 712. In contrast, in an as-applied challenge, the plaintiff contends that the statute is unconstitutional as construed and applied in actual practice against the plaintiff under the facts and circumstances of the particular case, not under some set of hypothetical circumstances. City of Memphis, 414 S.W.3d at 107.

Initially, it appeared that the parties disputed whether the plaintiffs' challenge to the constitutionality of Tennessee Code Annotated section 2-6-201(5)(C) and (D) was facial or as-applied. In truth, the dispute now appears more about the available scope of any injunctive remedy; that is, whether the trial court erred in issuing an injunction that applied to persons beyond the named plaintiffs. All parties now appear to recognize that the plaintiffs' constitutional claim is a hybrid; it has characteristics of both an as-applied challenge and a facial challenge. See Green Party of Tenn. v. Hargett, 791 F.3d 684, 691-92 (6th Cir. 2015) ("'[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge.' In fact, a claim can have characteristics of as-applied and facial challenges: it can challenge more than just the plaintiff's particular case without seeking to strike the law in all its applications." (Citations omitted)). The plaintiffs challenge the State's construction and application of this statute to them and others like them under the specific circumstances of the COVID-19 pandemic. The hybrid nature of the plaintiffs' constitutional challenge does not limit the scope of the available injunctive relief to only the named plaintiffs. Had the plaintiffs asserted only an as-applied challenge, the court still would have been permitted to award relief that extended beyond the named plaintiffs. See Whole Woman's Health v. Hellerstedt, 136 S.Ct. 2292, 2307 (2016).

The hybrid nature of the plaintiffs' constitutional challenge, however, does impact the burden placed upon them to establish their claim and, concomitantly, their likelihood of success on the merits of that claim. To the extent that the plaintiffs' claims extend beyond their circumstances, they must satisfy the standards for a facial challenge. Green Party of Tenn., 791 F.3d at 692 (quoting John Doe No. 1 v. Reed, 561 U.S. 186, 194 (2010)).

This Court recently reiterated the general burden faced by a plaintiff mounting a constitutional challenge to a statute:

> "In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional." "[I]n reviewing [a] statute for a possible constitutional infirmity, we are required to indulge every presumption and resolve every doubt in favor of the constitutionality of the statute."

"The Court must uphold the constitutionality of a statute wherever possible[.]"  "[T]he Court must be controlled by the fact that our Legislature may enact any law which our Constitution does not prohibit, and the Courts of this State cannot strike down one of its statutes unless it clearly appears that such statute does contravene some provision of the Constitution."

Willeford v. Klepper, 597 S.W.3d 454, 465 (Tenn. 2020) (citations omitted).  That burden is even greater when the challenge is facial.  Waters, 291 S.W.3d at 882 (citing Gallaher v. Elam, 104 S.W.3d 455, 459 (Tenn. 2003)).  A facial challenge to a statute is "'the most difficult challenge to mount successfully since the challenger must establish that no set of circumstances exist under which the Act would be valid.'"  Lynch v. City of Jellico, 205 S.W.3d 384, 390 (Tenn. 2006) (citations omitted).  Plaintiffs asserting a facial challenge, therefore, undertake an especially heavy legal burden.  Id.

d. Analytical Framework for Constitutional Review

The plaintiffs contend that the State's construction and application of the statutory criteria for absentee voting by mail under Tennessee Code Annotated section 2-6-201(5)(C) and (D) constitute an unconstitutional burden on their fundamental right to vote guaranteed by article I, section 5 and article IV, section 1 of the Tennessee Constitution, which provide in pertinent part:

Tenn. Const., art. 1, § 5
§ 5. Elections and suffrage

The elections shall be free and equal, and the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto, except upon conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction.

Tenn. Const., art. 4, § 1
§ 1. Qualifications; precincts; military duty

Every person, being eighteen years of age, being a citizen of the United States, being a resident of the State for a period of time as prescribed by the General Assembly, and being duly registered in the county of residence for a period of time prior to the day of any election as prescribed by the General Assembly, shall be entitled to vote in all federal, state, and local

elections held in the county or district in which such person resides. All such requirements shall be equal and uniform across the state, and there shall be no other qualification attached to the right of suffrage.

The General Assembly shall have power to enact laws requiring voters to vote in the election precincts in which they may reside, and laws to secure the freedom of elections and the purity of the ballot box.

This Court has not definitively determined the appropriate analytical framework by which to evaluate claims alleging violations of the Tennessee constitutional right to vote. In City of Memphis, we acknowledged this open question:

This Court has not previously addressed the standard of review applicable to claims arising under article I, section 5 of the Tennessee Constitution. The Court of Appeals determined that laws burdening the right to vote "must be subjected to strict scrutiny." While the Plaintiffs challenge the Court of Appeals' analysis of their claims, they maintain that strict scrutiny is the proper standard of review. The Defendants agree, conceding that "the Court of Appeals correctly applied the strict scrutiny standard of review." Notably, however, the United States Supreme Court has rejected the notion that strict scrutiny applies to every statute imposing a burden on the right to vote under the United States Constitution. Instead, addressing claims arising under the First and Fourteenth Amendments, the Court has adopted a "more flexible standard," pursuant to which a showing of important governmental regulatory interests may justify lesser restrictions on the right to vote, whereas strict scrutiny is reserved for laws that impose "'severe' restrictions." Thus, there is a potential question as to whether this Court should adopt a more stringent standard for voting rights challenges under article I, section 5 than is applied under the United States Constitution.

414 S.W.3d at 102 (citations omitted). Because the parties in City of Memphis had agreed that strict scrutiny review applied, however, we left for another day the determination of the appropriate analytical framework. Id.

Here, in contrast to City of Memphis, the plaintiffs and the State disagree as to the appropriate standard, with the plaintiffs urging strict scrutiny review and the State urging rational basis review.

Under the strict scrutiny standard urged by the plaintiffs, the State "must demonstrate that any burden on the right to vote is justified by a compelling state interest." City of Memphis, 414 S.W.3d at 102 (citation omitted). The State must further

- 21 -

demonstrate that the statute and its application of the statute are narrowly tailored to achieve a compelling state interest.  Id. (citation omitted).  The State's application of a statute cannot qualify as narrowly tailored if there are alternative means of achieving the governmental interest that would be less intrusive and comparably effective.  Id. at 103 (citation omitted).

In contrast, under the rational basis standard of review urged by the State, a statute will survive a constitutional challenge if any reasonably conceivable state of facts could provide a rational basis for its application of the statute.  See Armour v. City of Indianapolis, 566 U.S. 673, 681 (2012).

The trial court resolved this dispute about the appropriate standard of review for evaluating the plaintiffs' constitutional claim by employing the so-called Anderson-Burdick analytical framework.[11]

The Sixth Circuit Court of Appeals recently described the Anderson-Burdick framework in the context of a voting rights case arising as a result of the COVID-19 pandemic:

Under Anderson-Burdick, we first look to the burden the State's regulation imposes on the right to vote.  When States impose "'reasonable nondiscriminatory restrictions'" on the right to vote, courts apply rational basis review and "'the State's important regulatory interests are generally sufficient to justify' the restrictions."  But when States impose severe restrictions on the right to vote, such as poll taxes or limiting access to the ballot, strict scrutiny applies.  It is when cases fall between these two extremes that the Anderson-Burdick framework departs from the traditional tiers of scrutiny and creates its own test.

For these intermediate cases, where the burden on the right to vote is moderate, we must weigh that burden against "'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'"  Only where the State's interests

---

[11] The Anderson-Burdick framework derives its name from the analysis in two United States Supreme Court cases: Anderson v. Celebrezze, 460 U.S. 780 (1983), and Burdick v. Takushi, 504 U.S. 428 (1992).  Somewhat confusingly, this intermediate standard is itself sometimes referred to as the Anderson-Burdick standard.  For the sake of clarity, we will refer to the analytical framework as the "Anderson-Burdick framework" and the intermediate standard of constitutional review thereunder as the "intermediate standard."

outweigh the burden on the plaintiff's right to vote do voting restrictions not offend the Equal Protection Clause. While this standard is flexible, we must ultimately "make the 'hard judgment' that our adversary system demands."

Mays v. LaRose, 951 F.3d 775, 784 (6th Cir. 2020) (citations omitted); see also Thompson v. DeWine, 959 F.3d 804, 808-09 (6th Cir. 2020); Obama for America, 697 F.3d at 429-30.

While the plaintiffs still suggest that the Court could undertake in these cases to decide the question left open in City of Memphis, they also acknowledge that we need not do so.[12] We agree. At this juncture, in an interlocutory appeal from the trial court's entry of a temporary injunction, we will assume without deciding that the Anderson-Burdick analytical framework applies to the plaintiffs' claims.

### e. Application of the Anderson-Burdick Framework

### (1) Burden on Plaintiffs

Perhaps not surprisingly, the parties do not agree on the appropriate level of constitutional review based on the application of the Anderson-Burdick analytical framework. The plaintiffs appear to accept that the intermediate level of review applied by the trial court may well be appropriate. The State, however, contends that under the Anderson-Burdick framework, only rational basis review is warranted.[13] We disagree with the State on this point.

In order to determine the appropriate standard of constitutional review under the Anderson-Burdick framework, we first must determine the extent of the burden on the right to vote. The State's contention that only rational basis review is appropriate is founded on its view that the plaintiffs' constitutional challenge addresses only the "privilege" to vote absentee and not the fundamental right to vote.

---

[12] In their brief within their Rule 9 application in the Court of Appeals, the State in fact applied the Anderson-Burdick analytical framework.

[13] This argument is separate and apart from the State's primary argument that the rational basis standard, as opposed to the Anderson-Burdick framework, should be applied to the Plaintiffs' claims. Again, we are assuming for purposes of this appeal that the Anderson-Burdick framework applies.

It is beyond question that the right to vote is a "precious" and "fundamental" right. Harper v. Va. State Bd. of Elections, 383 U.S. 663, 670 (1966). Even the most basic of other rights are "illusory if the right to vote is undermined." Wesberry v. Sanders, 376 U.S. 1, 17 (1964). This fundamental right is expressly guaranteed under the Tennessee Constitution. See Tenn. Const. art. I, § 5; art. IV, § 1.

The State correctly points out, however, that the right to vote in any particular manner is not absolute. See Burdick v. Takushi, 504 U.S. 428, 433 (1992); Mays, 951 F.3d at 783. The Tennessee Constitution also expressly grants the Legislature the authority to promulgate laws to "secure the freedom of elections and the purity of the ballot box." Tenn. Const. art. IV, § 1. We previously have noted that pursuant to this express grant, "'[t]he authority of the Tennessee Legislature to control the conduct of elections held in this State is manifest.'" City of Memphis, 414 S.W.3d at 103 (citation omitted). The Legislature has exercised this authority and has provided by statute several alternative methods of voting. These include in-person voting, Tenn. Code Ann. §§ 2-3-101 et seq.; in-person early voting, Tenn. Code Ann. §§ 2-6-101 et seq.; and absentee voting by mail, Tenn. Code Ann. §§ 2-6-201 et seq.[14] The statutes make clear that in-person voting is the default and favored method of voting. Absentee voting by mail, like in-person early voting, is an exception, and absentee voting is limited in its availability to only certain categories of qualified registered voters. See Tenn. Code Ann. § 2-6-101(a) (2014) ("The purpose of this chapter is to provide a means for qualified voters to cast their votes when they would otherwise be unable to vote"); Id. § 2-6-201 (setting forth the limited categories of registered voters eligible to vote absentee by mail). This has led the Court in the past to refer to voting absentee by mail as a "privilege." Hilliard v. Park, 370 S.W.2d 829, 833–34 (Tenn. 1963), overruled in part on other grounds by Southall v. Billings, 375 S.W.2d 844, 852 (Tenn. 1963)). The State places great reliance on this characterization of absentee voting by mail in support of its argument that the plaintiffs' constitutional challenge seeks to vindicate only a privilege to vote absentee by mail and not the fundamental right to vote, such that only rational basis review is warranted in these cases.

The State also places great reliance on the decision of the United States Supreme Court in McDonald v. Bd. of Election Comm'rs of Chicago, 89 S.Ct. 1404, 1408 (1969). In McDonald, the Court addressed a federal constitutional challenge to Illinois' absentee voting statute. In determining that the appropriate level of constitutional review was rational basis review, the Court concluded as follows:

---

[14] These references to Tennessee's voting laws are to the current version of the Tennessee Code.

[T]here is nothing in the record to indicate that the Illinois statutory scheme has an impact on appellants' ability to exercise the fundamental right to vote. It is thus not the right to vote that is at stake here but a claimed right to receive absentee ballots. Despite appellants' claim to the contrary, the absentee statutes, which are designed to make voting more available to some groups who cannot easily get to the polls, do not themselves deny appellants the exercise of the franchise.

Id.

The State's reliance on this Court's prior characterization and on McDonald, however, is misplaced. Characterizing absentee voting by mail as a "privilege" begs the question of whether, under some circumstances, limitations on this lawful method of voting can amount to a burden on the right to vote itself. The answer to that question must be yes. If it were not, even when the right to vote is unavailable through any other means, deprivation of absentee voting by mail would nevertheless be deemed not to burden the fundamental right to vote itself.

We find support for this view in a recent decision of the United States District Court for South Carolina. In Thomas v. Andino, No. 3:20-cv-01552-JMC & No. 3:20-cv-01730-JMC, 2020 WL 2617329 (D. S.C. May 25, 2020), the plaintiffs challenged certain South Carolina absentee ballot voting laws as violating the fundamental right to vote under the First and Fourteenth Amendments to the United States Constitution due to the COVID-19 pandemic. Among the laws the plaintiffs challenged, and as to which they sought preliminary injunctive relief "due to alleged vulnerabilities to COVID-19," was that setting forth witness requirements. Id. at *1.[15] The court applied the Anderson-Burdick analytical framework in determining the appropriate level of constitutional review for purposes of evaluating the plaintiffs' likelihood of success on the merits. Id. at *17. In so doing, the Thomas court was confronted with the same contention which the State makes in this case; namely, that the plaintiffs' constitutional challenge applied only to a privilege and not a protected right and so was not entitled to constitutional review. Id. (footnote omitted). The court rejected this contention:

Inherent in the rule is that the challenge only applies to protected rights. Thomas/Middleton Plaintiffs and Defendants vigorously debate whether absentee voting is a right or a privilege.

---

[15] The plaintiffs originally also challenged and sought a preliminary injunction with respect to South Carolina's statutory eligibility requirements for absentee voting. That challenge, however, was rendered moot by subsequent legislation. Id. at *8 n.10.

- 25 -

> Defendants are correct that under South Carolina law, absentee voting is a "privilege," not a right to vote itself. However, while this court agrees that the right to an absentee ballot is not guaranteed by the First Amendment, that does not mean that absentee voting is *per se* unprotected under the First Amendment.

Id. at **17–18 (footnote omitted) (citations omitted). The court went on to find that the "privilege" to vote absentee "so intimately [a]ffects the fundamental right to vote" as to require the court to determine that the plaintiffs' challenge is to be examined under a "normative constitutional rights framework." Id. at *18; see also Obama for America, 697 F.3d at 430-31 (rejecting the state's reliance on McDonald and noting that "Plaintiffs did not need to show that they were legally prohibited from voting, but only that 'burdened voters have few alternative means of access to the ballot'" (citation omitted)); Mays, 951 F.3d at 783 ("So while States can regulate elections, they must be careful not to unduly burden the right to vote when doing so."). In this time of an unprecedented pandemic, we agree with this analysis and also will use normative constitutional analysis to evaluate the plaintiffs' constitutional challenge to statutes limiting access to absentee voting by mail.

The category of plaintiffs at issue consists of persons who neither have special vulnerability to COVID-19 nor are caretakers for persons with special vulnerability to COVID-19. Even with no special vulnerability to COVID-19, it is understandable that some voters in this category may wish to vote by mail. As emphasized by the State in the recent Tennessee Attorney General's Opinion, "the health effects of the disease can be severe, including serious damage to the lungs and other internal organs, and death" and because "there is currently no vaccine, cure, or proven effective treatment for COVID-19, the best way to prevent illness is to avoid being exposed to the virus." Op. Tenn. Att'y Gen. No. 20-14 at **2–3 (July 24, 2020) (footnotes omitted) (citations omitted).

However, the risk to this category of voters is significantly less than the risk to voters with special vulnerability to COVID-19 or voters who are caretakers for persons with special vulnerability to COVID-19. "The hallmark of a severe burden is exclusion or virtual exclusion" from voting. See Libertarian Party of Ky. v. Grimes, 835 F.3d 570, 574 (6th Cir. 2016). We cannot say that in-person voting is foreclosed for these plaintiffs, or that they are excluded or virtually excluded from voting. The State's Plan for in-person voting includes detailed measures for their protection and the protection of the poll workers, including social distancing, screening questions for poll workers before entry into the polling places, plexiglass shields for check-in procedures, mandatory masks and gloves for poll workers and recommended masks for voters, single use pens for voters to use to sign poll books, single use styluses for voters to use to ensure touchless voting, and frequent and regular sanitation of surfaces.

Having carefully reviewed the record in these cases, and upon consideration of the hardships of the COVID-19 pandemic, the State's response to the pandemic, Tennessee's current absentee ballot access laws, and the State's measures thus far with respect to voting in the upcoming August and November elections, we cannot say that the burden on the right to vote of this category of plaintiffs is severe. Rather, the burden is best characterized as moderate.[16]

### (2) State's Interests

Having determined that the burden on the right to vote is moderate, we now must weigh that burden against the precise interests put forward by the State as justification for the burden imposed, here the burden resulting from the statutory eligibility requirements for absentee voting by mail set forth in Tennessee Code Annotated section 2-6-201(5)(C) and (D), in the context of the COVID-19 pandemic. We must take into consideration the extent to which those interests make it necessary to burden the plaintiffs' rights.

The State contends that it has a compelling interest in the efficacy and integrity of the election process and that the eligibility requirements for absentee voting by mail serve those interests. Subsumed within these broader interests, the State identifies three specific interests: 1) prevention of fraud; 2) fiscal responsibility; and, 3) feasibility.[17]

With respect to fraud, the State's interest is recognized in the Tennessee Constitution, in the election statutes, and in our prior decisions. See City of Memphis, 414 S.W.3d at 103–04. The Tennessee Constitution expressly empowers the Legislature to enact laws to secure the freedom of elections and the purity of the ballot box. Tenn. Const. art. IV, § 1. One of the stated purposes of the Tennessee election laws, in turn, is to "regulate the conduct of elections by the people so that . . . [t]he freedom and purity of the ballot are secured." Tenn. Code Ann. § 2-1-102(1) (2014). Another of the stated purposes of the election laws is to "[m]aximize participation by all citizens in the electoral process[.]" Id. § 2-1-102(4). In furtherance of that purpose, the stated purpose of the early absentee voting statutes is to "provide a means for qualified voters to cast their votes when they would otherwise be unable to vote." Id. § 2-6-101(a). However, "[t]o prevent fraud in election, strict compliance with the provisions of [the absentee voting statutes] is required." Id. § 2-6-201(c). The Constitution and the statutes, thus,

---

[16] With respect to the relevance of the COVID-19 pandemic to our constitutional analysis, see Adams & Boyle, P.C. v. Slatery, 956 F.3d 913, 924–25 (6th Cir. 2020).

[17] These latter two interests are interrelated, and we will address them together.

express a duality of purpose or interest on the part of the State, which includes the prevention of fraud.

The trial court did not find the State's evidence regarding the risk of fraud which would result from an increase in absentee voting by mail persuasive. We tend to agree. [18] Our view of the evidence of the potential risk of fraud, however, is not particularly germane to our evaluation of the State's interest in preventing fraud. We previously have rejected the notion that the State must demonstrate the existence of voter fraud before it properly may undertake measures intended to prevent it. Specifically, we have stated that

> the integrity of the election process empowers the state to enact laws to prevent voter fraud before it occurs, rather than only allowing the state to remedy fraud after it becomes a problem . . . . Because of the nature of the state's constitutionally mandated role in the election process, a showing of harm is not a prerequisite to legislative action.

City of Memphis, 414 S.W.3d at 104. The Legislature may act prophylactically to prevent fraud so long as it does not "overstep by infringing on qualified citizens' right to suffrage." Id. See Little v. Reclaim Idaho, __S.Ct. __, 2020 WL 4360897 (Mem), at *2 (July 30, 2020) (Roberts, C.J., concurring) (recognizing that the State has a legitimate interest in preventing fraud).

---

[18] Here, Tennessee's absentee mail-in voting procedures include robust fraud-prevention measures. Absentee mail-in ballots are sent only to voters who make a written request on an application that includes the applicant's personal identifying information and his current address. Tenn. Code Ann. § 2-6-202(a) (2014 & Supp. 2019). The application notes that persons who have never voted before and registered to vote by mail must vote in-person. Tenn. Code Ann. § 2-2-115(7)(A) (2014 & Supp. 2019). A post card is sent to the address listed on the application, informing the applicant that the application has been received and informing him when ballots will be mailed. If the application lists an address different from that on his voter's registration, or his registration is inactive, the applicant must go through the special procedures for such circumstances. Tenn. Code Ann. § 2-6-202(d)(1). The applicant's signature is validated by comparison to the voter's registration. Id. § 2-6-202(b), (d)(1). If the application is accepted, the applicant is mailed an absentee ballot, a special envelope for the absentee ballot, and another larger envelope addressed to the county election commission. Id. § 2-6-202(d)(1). In completing

the ballot, the voter must sign an affidavit under penalty of perjury. Tenn. Code Ann. § 2-6-202(e); § 2-6-309 (2014). After the ballot is completed, it must be sealed inside the special ballot envelope, placed in the larger outer envelope, and mailed to the election commission; it cannot be hand-delivered. Tenn. Code Ann. § 2-6-202(e)(g). Once the ballot is received by the county election commission, the signature on the outer envelope is validated by comparison to the signature on the voter's registration. Id. § 2-6-202(g). The election administrator must record the validation of the signature before the ballot may be counted. Id.

With respect to the State's interests in fiscal responsibility and feasibility, the trial court likewise did not find the State's evidence persuasive. Once again, we are constrained by the Constitution's delegation to the Legislature of the power to regulate the conduct of our elections, which certainly includes within its scope the interest in fiscal responsibility and efficient conduct of the elections.

The importance of the Constitution's delegation cannot be overstated. The State plainly has an interest in the statutory election scheme which the Legislature has enacted pursuant to its constitutional authority. Bond v. Dunlap, No. 1:20-cv-00216-NT, 2020 WL 4275035, at *11 (D. Maine July 24, 2020) (citation omitted). The election statutes promulgated by the Legislature reflect a preference for in-person voting. That preference represents a policy choice within the scope of the Constitution's express delegation to the Legislature. Within the scope of the Constitution's delegation also are the policy choices of the Coordinator of Elections, to whom the Legislature has delegated the authority to oversee the conduct of elections in this State. This includes the policy choices made with respect to the conduct of elections during the COVID-19 pandemic. These policy choices will be judged by history and by the citizens of Tennessee. We, however, properly may not and will not judge the relative merits of them, regardless of our own views. To do so would be to exceed the proper scope of our role as jurists.[19]

We find that the State's interests in the efficacy and integrity of the election process are sufficient to justify the moderate burden placed on the right to vote of those plaintiffs and persons who neither have special vulnerability to COVID-19 nor are caretakers for persons with special vulnerability to COVID-19. We, therefore, conclude that those plaintiffs are unlikely to succeed on the merits of their claims.[20] Accordingly, we hold that the trial court erred in granting a temporary injunction as to those plaintiffs.

---

[19] Our recognition of the prerogative of the Legislature, and the Coordinator of Elections as its designee, to make policy choices is not intended to be nor should it be construed to be an endorsement of these particular policy choices. See Republican Nat'l Comm. v. Democratic Nat'l Comm., 140 S. Ct. 1205, 1208 (2020) ("The Court's decision on the narrow question before the Court should not be viewed as expressing an opinion on the broader question of whether to hold the election, or whether other reforms or modifications in election procedures in light of COVID–19 are appropriate. That point cannot be stressed enough."). Moreover, our decision in these cases at this time in no way precludes the Legislature and the Coordinator of Elections from making such other policy choices as the changing circumstances may warrant.

[20] In light of this conclusion, we need not address the remaining injunction factors. See Obama for America, 697 F.3d at 436; Lyons, 2020 WL 3396319, at *2.

### III. Conclusion

For the reasons stated herein, the judgment of the trial court granting the plaintiffs a temporary injunction is vacated and the cases are remanded to the trial court for further proceedings consistent with this opinion. Recognizing that absentee ballots already have been cast for the August 6, 2020 election consistent with the trial court's temporary injunction, and mindful of the goal of avoiding alterations to election rules on the eve of an election, see Republican Nat'l Comm. v. Democratic Nat'l Comm., 140 S.Ct. 1205, 1207 (2020) (citations omitted), the absentee ballots of all Tennessee registered voters who timely requested and submitted an absentee ballot by mail for the August 6, 2020 election pursuant to the trial court's temporary injunction and which absentee ballots otherwise meet the requirements of the absentee voting statutes shall be duly counted. See Tenn. R. App. P. 36(a). Costs on appeal are taxed half to the plaintiffs on appeal and half to the State defendants, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE